J-S03001-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SAUNDRA COLE | : | |
| | : | |
| Appellant | : | No. 1446 WDA 2018 |

Appeal from the Order Entered September 11, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0009781-2017

BEFORE: McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.: FILED MARCH 27, 2020

Sandra Cole appeals from the judgment of sentence entered following her conviction for disorderly conduct. See 18 Pa.C.S.A. § 5503(a)(4). Cole challenges the sufficiency of the evidence, claims the verdict violated her Due Process rights, and challenges the imposition of a crime lab fee, as part of the costs of prosecution. We vacate the judgment of sentence insofar as it imposes costs for the lab fees; we affirm in all other respects.

The trial court provided the following factual history:

> On March 10, 2017, Detective Robert Berberich was in the Hazelwood neighborhood of the City of Pittsburgh with his partners Detectives Scott Brown and Christopher Goetz. The detectives were involved in a narcotics investigation and arrest that took them to 214-216 Tipton Street in that neighborhood. While on the outside curtilage of 216 Tipton Street, the occupant of the residence, Marlon Jackson ([Cole's] son), intentionally released a pit bull canine that

_____

[*] Retired Senior Judge assigned to the Superior Court.

attacked Officer Brown. The canine was fired upon as it attacked Officer Brown; unfortunately, Officer Brown was wounded in the foot by the gunfire. [Cole] was alerted about the incident by her son, and she immediately came to the residence in her vehicle. Medics arrived on the scene around the same time as [Cole]. When [Cole] arrived she parked in front of the 216 Tipton Street and approached the officers. [Cole] inquired about the situation that was unfolding outside the residence, and Detective Berberich explained that he witnessed Jackson release the dog on his partner. [Cole] instructed Jackson to go and sit in her car which Detective Berberich indicated was acceptable but explained that Jackson was not free to leave the scene. Shortly thereafter, [Cole] entered her car with Jackson inside and attempted to leave the scene. Detective Janine Triolo, as well as several other officers on scene, ordered her to stop. [Cole] failed to immediately stop and almost struck Detective Triolo. Officers were forced to draw their weapons in order to get her to stop. [Cole] was subsequently detained by Detectives and charged as noted hereinabove.

Trial Court Opinion, filed Aug. 6, 2019, at 4-5 (citations to record omitted).

Following a bench trial, the trial court found Cole "guilty of one count of disorderly conduct under subsections one and/or four." N.T., 9/11/18, at 75. However, the trial court sentenced Cole only under subsection (a)(4), ordering her to pay a $100 fine and the costs of prosecution. The Commonwealth submitted a tally of such costs that included a "$300 Allegheny Crime Lab Fee." Cole timely appealed.

Cole raises the following issues:

I. Was the evidence insufficient to establish beyond a reasonable doubt that Ms. Cole acted with the intent to cause public inconvenience, annoyance or alarm, or recklessly created the risk thereof where there was no direct or circumstantial evidence that Ms. Cole harbored such an intent and where no testimony could give rise to a reasonable inference that Ms. Cole recklessly created a risk of public inconvenience, annoyance, or alarm?

II. Was the evidence . . . insufficient to establish beyond a reasonable doubt that Ms. Cole's conduct created a hazardous or physically offensive condition where testimony established that Ms. Cole's car traveled at an extremely low speed over a very short distance, if the vehicle moved at all, and the only individual who possibly could have been in any danger testified that she approached Ms. Cole's vehicle, that she initiated contact with Ms. Cole's vehicle, that Ms. Cole did not move the vehicle after the witness ordered her not to move, and that the witness was unsure if Ms. Cole's vehicle moved at all?

III. Did the verdict violate Ms. Cole's due process rights where the verdict was vague and found Ms. Cole guilty of 18 Pa.C.S. § 5503 subsection (a)(1) "and/or" subsection (a)(4), when Ms. Cole was not charged with a violation of subsection (a)(1)?

IV. Was the fee imposed on Ms. Cole to bear the costs of an Allegheny Crime Lab Fee illegal when there was no evidence or facts related to her case for which a crime lab was used?

Cole's Br. at 5-6.

I.    Sufficiency of the Evidence

Cole's first two issues challenge the sufficiency of the evidence. When reviewing a sufficiency claim, "we must determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crime charged is established beyond a reasonable doubt." Commonwealth v. Green, 204 A.3d 469, 484 (Pa.Super. 2019) (citation omitted). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." Id. at 484-85 (quoting Commonwealth v. Brown, 23 A.3d 544, 559 (Pa.Super. 2011) (en banc)).

- 3 -

The offense of disorderly conduct is defined in relevant part as follows:

(a) Offense defined.--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

. . .

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S.A. § 5503(a)(4).

A. Sufficient Evidence of Mens Rea

Cole first argues that the Commonwealth failed to establish that she intended "to cause public inconvenience, annoyance or alarm, or recklessly created a risk thereof." 18 Pa.C.S.A. § 5503(a). She argues that the only evidence of her intent in entering her car and beginning to drive was her testimony and her son's testimony that they were going to search for their dog. Cole claims the Commonwealth did not demonstrate that she recklessly created a risk of public inconvenience, annoyance, or alarm because they did not prove she consciously disregarded a substantial and unjustifiable risk that her conduct would create a public inconvenience, annoyance, or alarm. She argues that "the scene was one of confusion where even the police officers who were involved in the incident did not have a basic grasp of what was happening or what the next steps in gaining control of the situation were." Cole's Br. at 23. She concludes that she "could not be expected to have a better understanding of the situation than the police officer who informed her

about the incident and permitted both her and her son to enter the vehicle." Id.

The mens rea element of disorderly conduct demands proof that the defendant "intentionally or recklessly created a risk [of causing] or caused a public inconvenience, annoyance or alarm." Commonwealth v. Maerz, 879 A.2d 1267, 1270 (Pa.Super. 2005) (citation omitted). The Commonwealth may establish the mens rea of this offense by proving "'reckless disregard of the risk of public inconvenience,' annoyance, or alarm," even where the defendant intended some other outcome. Id. at 1269 (citing Commonwealth v. Kidd, 442 A.2d 826 (Pa.Super. 1982)).

Here, the evidence established that Cole, at a minimum, acted with a reckless disregard for whether her actions would cause public inconvenience, annoyance, or alarm. She attempted to drive off from an active crime scene – one where a dog had attacked an officer, and police and other emergency personnel were continuing to arrive – after police had told her that her son was not free to leave. She knew or should have known that attempting to do so risked public inconvenience, annoyance, or alarm, in that her actions could cause injury or alarm, and did in fact cause at least one officer to pull his gun. The testimony that she harbored some other specific intent in driving away does not eliminate the evidence of her reckless disregard.

B. Sufficient Evidence of a Hazardous Condition

Cole next argues the Commonwealth failed to establish that she created a hazardous or physically offensive condition. She claims that no one was in

danger and her actions did not cause a risk of injury, and the officers drew their weapons due to a "misperception of what was happening." Cole's Br. at 26. Cole claims the evidence does not support the court's factual findings, including that she failed to stop immediately; she almost struck Detective Triolo; and the officers were forced to draw their weapons. She claims her "actions created, at most, momentary confusion and a minor inconvenience." Id. at 28.

The evidence supported the trial court's conclusion that Cole's actions created a hazardous condition. "A hazardous condition is a condition that involves danger or risk[,] particularly of injuries resulting from public disorders." Commonwealth v. N.M.C., 172 A.3d 1146, 1150 (Pa.Super. 2017) (quoting Commonwealth v. Williams, 574 A.2d 1161, 1164 (Pa.Super. 1990)) (internal quotation marks omitted) (alteration in original).

The evidence also supported the court's factual findings that Cole left the scene after being informed her passenger was not free to leave and failed to stop until at least one officer drew his gun. N.T., 9/11/18, at 23 ("I drew my firearm and ordered Ms. Cole to stop."); N.T., 9/11/18, at 30 (Cole did not "immediately stop and get out of the vehicle"). The testimony additionally supports the further finding that Cole's car almost hit Detective Triolo. Detective Triolo testified she "was hitting [her] hands on the hood of the vehicle to alert them to stop," and that if the vehicle had not stopped, it "absolutely would have stuck [her]." N.T., 9/11/18, at 29. Such factual findings support the conclusion that Cole created a hazardous condition.

## II.   Due Process Rights

Cole argues that her due process rights were violated because the trial court stated that it found her guilty of disorderly conduct under "subsections one and/or four" of Section 5503(a). She argues this was improper because she was only charged under subsection 5503(a)(4). She states she was not provided notice of a charge under subsection 5503(a)(1), and the imposition of a "vague verdict" violates the fundamental fairness and protection against arbitrary government action.

"Just as it requires a criminal statute to give fair warning of the conduct proscribed, due process requires that the criminal information provide fair notice of every crime of which a criminal defendant is accused." Commonwealth v. Sims, 919 A.2d 931, 939 (Pa.Super. 2007) (citations omitted).

Any error the trial court committed in stating that "Cole is guilty of one count of disorderly conduct under subsections one and/or four" is harmless. The bill of information charged her with violating subsection 5503(a)(4), the court sentenced Cole for only a violation of that subsection, and the only conviction listed on the sentencing order is for that subsection. This claim lacks merit.

## III.   Crime Lab Fee

Cole argues that the costs of prosecution improperly included a $300 fee for the Allegheny Crime Lab. She argues the court did not have the authority to impose this fee because no crime lab work was necessary for the

only charge for which she was tried and convicted, disorderly conduct. She argues the crime lab fee did not have any relationship to the prosecution, noting she "was tried and convicted based solely on eyewitness testimony" and the "alleged offense was a summary disorderly conduct charge." Cole's Br. at 37. The offense "had no bearing whatsoever to any substance or material which would necessitate the use of a crime lab fee." Id.

The Commonwealth agrees with Cole that her disorderly conduct conviction did not require the use of a crime lab to process physical evidence. However, it notes that the "overall chain of events that precipitated appellant's arrival at the crime scene did, in fact, involve the discovery of drug evidence near appellant's property that was then sent to the Allegheny County Crime Lab." It notes that the recovery of the controlled substances led to charges against another person, Devin Paige. The Commonwealth argues "the drug investigation was the first link in the chain of events that precipitated [Cole's] and the other officer's arrival to the scene and her subsequent crime of [d]isorderly [c]onduct." Commonwealth's Br. at 49.

A challenge to the trial court's authority to impose costs implicates the legality of sentence. Commonwealth v. Lehman, 201 A.3d 1279, 1283 (Pa.Super. 2019). Our standard of review is de novo and our scope of review is plenary. Id.

Where a sentence requires the defendant to pay the costs of prosecution and trial, such costs include the expenses that the district attorney incurred "in connection with" the prosecution:

§ 4403. Expenses incurred by district attorney

All necessary expenses incurred by the district attorney or his assistants or any officer directed by him in the investigation of crime and the apprehension and prosecution of persons charged with or suspected of the commission of crime shall be paid by the county from the general funds of the county, upon the approval of the bill of expenses by the district attorney and the court. In any case where a defendant is convicted and sentenced to pay the costs of prosecution and trial, the expenses of the district attorney in connection with such prosecution shall be considered a part of the costs of the case and be paid by the defendant.

16 P.S. § 4403. The Commonwealth bears the burden of proving that the expenses were necessary and in connection with the prosecution of the offense or offenses of which the defendant was found guilty. Commonwealth v. Garzone, 993 A.2d 1245, 1259 (Pa.Super. 2010), aff'd 34 A.3d 67 (Pa. 2012).

In Commonwealth v. Moran, 675 A.2d 1269, 1272 (Pa.Super. 1996),[1] we concluded that the trial court erred in requiring the defendant to pay the costs incurred in connection with a drunk driving charge, where the jury had acquitted the defendant of that charge. Id. at 1273. We explained that in this context the terms "prosecution" and "conviction" must be read as being "synonymous," because an "exoneration of all charges would not permit the imposition of costs of 'prosecution.'" Id. at 1272 n.11. We thus concluded that

_____

[1] Section 4403 applies to counties of the second class, which Allegheny County is. The court in Moran interpreted Section 1403, which contains identical language but applies to all counties other than counties of the first and second class.

"[t]here must be a nexus between the 'conviction' and [costs] imposed . . . ." Id.

Here, we conclude the Commonwealth has not proved the crime lab fee was a necessary expense in the prosecution of Cole for disorderly conduct. Although the fee was connected to the investigation of crimes committed by others arrested that same day, it was not connected to the charge for which Cole was convicted, which was not a drug charge. We therefore will vacate the judgment of sentence insofar as it imposed costs for the "$300 Allegheny Crime Lab Fee."[2]

Judgment of sentence affirmed in part and vacated in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  3/27/2020

_____

[2] See Commonwealth v. Garzone, 993 A.2d 1245, 1261 (Pa.Super. 2010) (vacating improperly imposed costs, stating, "Since the costs of prosecution at issue are not integral to the sentencing scheme, we conclude it is unnecessary to remand this matter and we will remedy the impropriety of the sentence now.").